UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JORGE E. GONZALEZ,

      Applicant,

v.                                                    CASE NO. 8:12-cv-634-T-23TBM

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

Gonzalez applies under 28 U.S.C. § 2254 for the writ of habeas corpus

(Doc. 1) and challenges his convictions for aggravated battery with a deadly weapon,

for which he is imprisoned for fifteen years.  Numerous exhibits ("Respondent's

Exhibit __") support the response.  (Doc. 18)  The respondent admits the application's

timeliness.  (Response at 4, n.3 Doc. 18)

## FACTS[1]

Mr. Harold, the victim, was drinking beer in a bar with his son.  Mr. Harold

left the bar to purchase some cigarettes at a convenience store adjacent to the bar.  As

he was purchasing the cigarettes, Mr. Harold was hit from behind with a beer bottle,

which broke on his head.  Mr. Harold turned around, kicked the assailant in the

---

[1] This summary of the facts derives from Gonzalez's brief on direct appeal. (Respondent's Exhibit 2)

groin, and struggled with the assailant.  When the fighting stopped, Mr. Harold asked the assailant to identify himself, but the assailant left the premises.  Mr. Harold did not recognize the assailant.  The incident was both videotaped by the security cameras inside the store and witnessed by the store clerk.  Approximately ten days later, Mr. Harold identified Gonzalez as the assailant when a detective showed Mr. Harold a "photo-pack."

Following an unsuccessful direct appeal, Gonzalez challenged his conviction in a Rule 3.850 motion for post-conviction relief, and he challenged his sentence in a Rule 3.800 motion to correct his sentence.  Neither motion was successful. Gonzalez's Section 2254 application asserts the eight claims of ineffective assistance of counsel that he asserted in his motion for post-conviction relief.  As discussed below, the post-conviction court's credibility determinations and other rulings — each of which is contained in a thorough written order — govern federal review of Gonzalez's claims of ineffective assistance of counsel.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693  (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state

court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___

U.S. ___, 131 S. Ct. 770, 786-87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313

(11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the

state court decision that we are to decide."). The phrase "clearly established Federal

law" encompasses only the holdings of the United States Supreme Court "as of the

time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA]

modified a federal habeas court's role in reviewing state prisoner applications in

order to prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal

court must afford due deference to a state court's decision. "AEDPA prevents

defendants — and federal courts — from using federal habeas corpus review as a

vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*,

559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388,

1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for

evaluating state-court rulings, which demands that state-court decisions be given the

benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court on

direct appeal affirmed Gonzalez's convictions and sentence. (Respondent's Exhibit 7)

Similarly, in another *per curiam* decision without a written opinion the state appellate

court affirmed the denial of Gonzalez's subsequent Rule 3.850 motion to vacate.

(Respondent's Exhibits 13a and 14)  The state appellate court's *per curiam* affirmances

warrant deference under Section 2254(d)(1) because "the summary nature of a state

court's decision does not lessen the deference that it is due."  *Wright v. Moore*,

278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002),

*cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 131 S. Ct.

at 784-85 ("When a federal claim has been presented to a state court and the state

court has denied relief, it may be presumed that the state court adjudicated the claim

on the merits in the absence of any indication or state-law procedural principles to the

contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013)

(describing the difference between an "opinion" or "analysis" and a "decision" or

"ruling" and explaining that deference is accorded the state court's "decision" or

"ruling" even if there is no "opinion" or "analysis").

Review of the state court decision is limited to the record that was before the

state court:

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim
> on the merits. Section 2254(d)(1) refers, in the past tense, to a
> state-court adjudication that "resulted in" a decision that was
> contrary to, or "involved" an unreasonable application of,
> established law. This backward-looking language requires an
> examination of the state-court decision at the time it was made.
> It follows that the record under review is limited to the record in
> existence at that same time, i.e., the record before the state
> court.

*Pinholster*, 131 S. Ct. at 1398. Gonzalez bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Gonzalez's post-conviction claims warrants deference in this case. (Orders Denying Motion for Post-Conviction Relief, Respondent's Exhibits 13a and 14)

## INEFFECTIVE ASSISTANCE OF COUNSEL

Gonzalez claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must

- 6 -

> show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Gonzalez must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Gonzalez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690–91.  Gonzalez cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Gonzalez must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d). Sustaining a claim of ineffective assistance

of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d)

are both 'highly deferential,' and when the two apply in tandem, review is 'doubly'

so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant

must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."),

*Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference

is doubly difficult for a petitioner to overcome, and it will be a rare case in which an

ineffective assistance of counsel claim that was denied on the merits in state court is

found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of

Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's

ineffective counsel claim — which is governed by the deferential *Strickland* test —

through the lens of AEDPA deference, the resulting standard of review is "doubly

deferential."), *cert. denied*, ___ U.S. ___, 134 S. Ct. 191 (2013).

The state court conducted an evidentiary hearing and denied Gonzalez's claims

of ineffective assistance of counsel. The order applies *Strickland*. (Respondent's

Exhibit 14) Because the state court correctly recognized that *Strickland* governs each

claim of ineffective assistance of counsel, Gonzalez cannot meet the "contrary to" test

in Section 2254(d)(1). Gonzalez instead must show that the state court unreasonably

applied *Strickland* or unreasonably determined the facts. In determining

"reasonableness," a federal application for the writ of habeas corpus authorizes

determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis. As a consequence, the post-conviction court's lengthy opinion is quoted for each ground.

## GROUNDS FOR RELIEF

### Ground One:

Gonzalez alleges that trial counsel rendered ineffective assistance by both not deposing four witnesses and not investigating to find other witnesses. Gonzalez faults counsel for not deposing four individuals who were listed as state's witnesses: Mr. Harold (the victim), Mr. Asberry (the store clerk), and Deputies Minardi and Williams. Gonzalez faults counsel for not adequately investigating eight individuals who were allegedly known to the state but not listed as a state's witness: a second deputy, store clerks "A" and "B," a witness in the store, a witness in the parking lot, a taxi driver, the paramedics, and an "unknown witness." The post-conviction court's opinion addresses some witnesses individually and groups others, but rejects Gonzalez's claim that counsel rendered ineffective assistance.

1.  Mr. Harold:

Gonzalez faults defense counsel for not deposing Mr. Harold.  The state court

denied this claim as follows (Respondent's Exhibit 14 at 3–5) (citations to record

omitted):

> Defendant asserts counsel was ineffective for failing to depose
> Mr. Harold and if counsel had deposed him, Mr. Harold's
> testimony could have been used to impeach or contradict his
> trial testimony. Mr. Harold was the victim, and allegedly the
> only eye witness to the existence of a beer bottle used in the
> crime. Defendant asserts further that the testimony could have
> supported the defense theory of innocence by impeaching him
> regarding the existence of the beer bottle. At the evidentiary
> hearing, Defendant's testimony was consistent with his
> allegations, but he added that counsel told him she did not want
> to conduct depositions in his case because it would reveal too
> much of her trial strategy. Defendant's trial counsel, Maria
> Pavlidis, testified as follows regarding Defendant's allegation:
>
> > BRANHAM: Now, in terms of Mr. Harold —
> > and why did you not do discovery depositions in
> > this particular case?
> >
> > PAVLIDIS: That I don't know. I thought I had —
> > I may have made an attempt to set a deposition,
> > but it wasn't done. There was no deposition done
> > of him in this case.
> >                                  .  .  .
> >
> > And I can't say why I didn't. I know part of it —
> > I know Mr. Gonzalez didn't want to waive any
> > speedy trial. The entire incident was captured on
> > video, and so a lot of it was on that. The incident
> > between him and Mr. Harold was captured all on
> > video.
> >
> > I did speak with Mr. Harold several days before
> > the trial and discussed his testimony. And then
> > based on that, I just did a search of his record.
> > And his testimony wasn't different than what was
> > in the police report.

> The incident lasted probably about a minute or
> two, inside this, I believe it was 7-11. And the
> officers didn't collect any physical evidence. There
> wasn't a lot of just investigation done in this case
> by the officers involved.
>
> .  .  .
>
> BRANHAM: Okay. Approximately, how long do
> you think you recall speaking with him?
>
> PAVLIDIS: I would say 15 minutes maybe. Just
> enough time to ask him what occurred. Ask him
> about his prior record. Long enough to get all that
> information from him. His date of birth, where he
> had resided.

> [T]he Court finds Ms. Pavlidis's testimony to be more credible
> than Defendant's testimony. Therefore, based on Ms. Pavlidis's
> testimony, the Court finds she did adequately perform her own
> investigation of Mr. Harold, knew what his testimony would be,
> and chose not to depose him based on speedy trial needs and her
> evaluation of the evidence against Defendant. Therefore, based
> on counsel's testimony, the Court finds Defendant has failed to
> demonstrate any deficient performance. *See Strickland*, 466 U.S.
> at 686–87. Additionally, Defendant testified that he disagreed
> with counsel's strategy not to take depositions and her reasoning
> that it would reveal the defense's theory before trial. The Court
> notes that counsel cannot be held ineffective for pursuing a
> reasonable strategy where other possibilities have been
> considered and rejected. *See Rutherford v. State*, 272 So. 2d 216,
> 223 (Fla. 1998) (quoting *State v. Bolender*, 503 So. 2d 1247, 1250
> (Fla. 1987). Therefore, claim one as to Mr. Harold is denied.

The post-conviction court rejected this claim based on a credibility
determination and Gonzalez's consequent failure to prove that counsel's performance
was deficient. The state court accepted trial counsel's testimony over that of
Gonzalez. A federal court must defer to the state court's findings of fact. 28 U.S.C.
§ 2254(e)(1). This deference applies to credibility determinations that resolve

conflicting testimony, as *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998),

*cert. denied*, 526 U.S. 1047 (1999), instructs:

> We must accept the state court's credibility determination and
> thus credit [the attorney's] testimony over [the petitioner's].
> *Coulter v. Herring*, 60 F.3d 1499, 1503 (11th Cir. 1995) (applying
> the statutory presumption of correctness under § 2254(d) to the
> state court's credibility determination), *cert. denied*, 516 U.S.
> 1122 (1996).

The deference is heightened when reviewing a credibility determination in a

Section 2254 application. *Gore v. Sec'y, Dep't of Corr.*, 492 F. 3d 1273, 1300 (11th Cir.

2007), *cert. denied*, 552 U.S. 1190 (2008). *Accord Kurtz v. Warden, Calhoun State Prison*,

541 Fed. App'x 927, 929 (11th Cir. 2013)[2] ("'A certain amount of deference is always

given to a trial court's credibility determinations,' and a credibility determination in a

case on habeas review receives heightened deference.") (quoting *Gore*), *cert. denied*

*sub nom, Kurtz v. Jeanes*, 134 S. Ct. 2728 (2014).

The post-conviction court reasonably applied *Strickland* by deferring to

counsel's strategic choice not to depose Mr. Harold and by deferring to counsel's

desire to preserve Gonzalez's speedy trial rights. *See Strickland*, 466 U.S. 690

("[S]trategic choices . . . are virtually unchallengeable."). Gonzalez fails to prove that

the state court unreasonably determined the facts or unreasonably applied *Strickland's*

deficient performance standard. As a consequence, Gonzalez proves no entitlement

to relief under this claim.

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as
persuasive authority." 11th Cir. Rule 36-2.

2.  Mr. Asberry:

Gonzalez faults defense counsel for not deposing Mr. Asberry.  The state court

denied this claim as follows (Respondent's Exhibit 14 at 5–7) (citations to record

omitted):

> Defendant asserts that this witness was listed on the notice of
> discovery; however, the Defendant does not know who the
> individual is. Defendant states that Mr. Asberry could be one of
> the store clerks, the witness inside the store, a witness in the
> parking lot, or the taxi driver. Defendant states that counsel
> failed to depose Mr. Asberry for the purpose of contradicting,
> impeaching, or ascertaining the truth of the events. Defendant
> contends that had Mr. Asberry been deposed, he would have
> testified to the truth, which would have refuted the State's only
> witness and further confirmed Defendant's version and defense
> theory. At the evidentiary hearing, Defendant testified that he
> asked counsel to depose all witnesses and search for more
> witnesses in the area where the incident occurred. Counsel
> testified to the following regarding Mr. Asberry:
>
> > BRANHAM: Did you ever send an invest request
> > to go and interview any other witnesses who had
> > been listed, like Mr. Asberry?
> >
> > PAVLIDIS: Yes. I sent my investigator to the bar
> > and to the surrounding — the 7-11 and the bars
> > surrounding the area to interview witnesses. To
> > find anyone who recalled this incident or who
> > knew of Mr. Gonzalez or was around at the time
> > of this incident. He met with patrons at the bar
> > and then went to the 7- 11. No one had any
> > knowledge of our client nor this incident.
> >
> > BRANHAM: Did he specifically speak with Mr.
> > Asberry?
> >
> > PAVLIDIS: I don't know. I don't know if he
> > spoke to him.
> >
> > BRANHAM: Do you have any documentation
> > that he spoke with Mr. Asberry?

PAVLIDIS: No, I don't have any documentation of that.

BRANHAM: Do you recall any conversations with the investigator regarding any statement that Mr. Asberry may have?

PAVLIDIS: I don't recall that, no.

BRANHAM: And do you have any documentation in your notes that Mr. Asberry was interviewed?

PAVLIDIS: No. And he did not testify at trial.

BRANHAM: Is there any reason why you did not take the deposition of Mr. Asberry in this case?

PAVLIDIS: I don't know, no.

BRANHAM: Now Mr. Asberry was identified in the records as being the male clerk at the 7-11?

PAVLIDIS: Yes. And his testimony would've been that an Hispanic male came up behind the victim and hit him in the head with a beer bottle.

BRANHAM: And did the police report indicate that he had given other than a Hispanic male, any other further descriptive information regarding that individual?

PAVLIDIS: No. And I don't believe he was ever shown a photo pack or was able to just pick out anyone.

BRANHAM: And that [i]s going to be my next question. Did you ever send the investigator out to show the photo pack that was shown to the victim to Mr. Asberry?

PAVLIDIS: No, I did not want to do that. Strategically, I wouldn't do that. Not to have another identification of my client.

- 15 -

[T]he Court finds counsel's testimony more credible than Defendant's testimony. Therefore, according to counsel's testimony, the Court finds counsel sent an investigator to look for witnesses and did follow up on the known witnesses as part of her preparation for trial. Specifically as to Mr. Asberry, counsel testified that she knew the contents of what Mr. Asberry's testimony would be, and strategically chose not to pursue this witness with a photo pack for fear he would identify Defendant. The Court finds, based on counsel's testimony, that Defendant has not demonstrated any deficient performance by counsel because she investigated known witnesses and searched for new witnesses at the scene of the crime. Because Defendant cannot demonstrate deficient performance, the Court finds his claim must be denied. *See Strickland*, 466 U.S. at 686–87. Furthermore, the Court notes that counsel likely made a strategic decision not to call this witness at trial based on the fact that his testimony — as counsel understood it — would have been damaging to the defense. *See Rutherford*, 272 So. 2d at 223. Therefore, claim one as to Mr. Asberry is denied.

The post-conviction court rejected this claim based on a credibility determination and Gonzalez's consequent failure to prove that counsel's performance was deficient. As stated above, the state court's credibility determination binds this court. The post-conviction court reasonably applied *Strickland* both by deferring to counsel's strategic choice not to investigate Mr. Asberry further and by determining that counsel's investigation was not deficient performance. *See Strickland*, 466 U.S. 690–91 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). Gonzalez fails to prove that the state court unreasonably determined the facts or unreasonably applied *Strickland's* deficient performance standard. As a consequence, Gonzalez proves no entitlement to relief under this claim.

3.  Deputies Minardi and Williams:

Gonzalez faults defense counsel for not deposing both Deputy Minardi (the officer who showed the victim the "photo-pack") and Deputy Williams (the officer who was the first to arrive on the scene).  The state court denied this claim as follows (Respondent's Exhibit 14 at 7–9) (citations to record omitted):

> Defendant contends counsel failed to depose Deputy Minardi or investigate the circumstances regarding the photographic identification. Defendant contends that Deputy Williams conducted a "lackadaisical" investigation of the crime scene and did not collect evidence. Defendant asserts that had counsel deposed these two deputies, their deposition testimony could have been used to impeach their trial testimony regarding the eyewitnesses at the scene and the collection of evidence. As with the other witnesses in claim one, Defendant testified he did not agree with counsel's strategy not to depose these witnesses. Counsel testified as follows regarding the officers:
>
> > BRANHAM: Now, in terms of the two officers who testified at trial, Officer Williams and Minaldi, what was your reason for not deposing those two individuals?
> >
> > PAVLIDIS: I reviewed the reports and, like I said before, their investigation was very minimal. They interviewed the victim that day. Talked about one witness. And other than that, didn't collect any type of physical evidence besides the video.
> >
> > BRANHAM: So that was a strategic decision on your part not to depose them?
> >
> > PAVLIDIS: Yes.
> >
> > BRANHAM: Okay. What types of things can you find out when you do depositions?
> >
> > PAVLIDIS: A number of things. I wouldn't say that that's my normal practice. I — most of my cases, I always depose all the witnesses. In this instance, I did not. And part of that was probably

because he did not — he wanted the trial to go at
that period in time, he didn't want to waive
speedy trial.

[T]he Court finds counsel's testimony to be more credible than
Defendant's testimony. Therefore, according to counsel's
testimony, the Court finds counsel made a strategic decision not
to depose the officers. The Court finds counsel clearly
considered taking depositions as evidenced by her discussions
with Defendant and her normal practice; however, because of
the circumstances of this case, counsel strategically chose to
forego depositions. Additionally, on cross-examination, counsel
testified that her strategy in questioning the officers at trial was
to point out their "sloppy police work." Counsel testified that
taking depositions would not have changed her strategy in the
questioning of these witnesses at trial. Because counsel made a
strategic decision not to take depositions, and because
depositions would not have changed counsel's overall strategy,
the Court finds Defendant has failed to demonstrate either
deficient performance or prejudice. *See Strickland*, 466 U.S. at
686–87. Therefore, claim one as to Deputy Minardi and Deputy
Williams is denied.

Consonant with the other witnesses, the post-conviction court reasonably

applied *Strickland* by deferring to counsel's strategic choice not to depose the two

deputies and by deferring to counsel's desire to preserve Gonzalez's speedy trial

rights.  Gonzalez fails to prove that the state court unreasonably determined the facts

or unreasonably applied *Strickland's* deficient performance standard.  As a

consequence, Gonzalez proves no entitlement to relief under this claim.

4.  "Second" Deputy:

Gonzalez faults defense counsel for neither disclosing to him the identity of the

second deputy who arrived on the scene nor deposing that officer.  The state court

denied this claim as follows (Respondent's Exhibit 14 at 9):

> Defendant contends that there was a second deputy at the scene
> that counsel failed to investigate and depose. Defendant alleges
> counsel failed to relate information regarding this witness to
> him. Defendant states that had this unknown deputy been
> deposed, counsel would have been able to investigate the results
> that support Defendant's claim of innocence, defense, and
> defense theory. Defendant did not present any evidence at the
> evidentiary hearing to show that a police officer other than
> Deputy Minardi and Deputy Williams had information relevant
> to Defendant's case and should have been deposed by counsel.
> Therefore, the Court finds Defendant has failed to meet his
> burden, and has likewise [not] demonstrated deficient
> performance or prejudice. *See Strickland*, 466 U.S. at 686–87.
> Therefore, claim one as to the "second deputy" is denied.

The post-conviction court reasonably applied *Strickland* by determining that

Gonzalez proved no deficient performance because Gonzalez presented no facts to

support his claim.  When provided the opportunity in an evidentiary hearing,

Gonzalez failed to develop and present to the post-conviction court the facts necessary

to support this claim.  Gonzalez fails to prove that the state court unreasonably

determined the facts or unreasonably applied *Strickland's* deficient performance

standard.  As a consequence, Gonzalez proves no entitlement to relief under this

claim.

5.  Other Witnesses:

Gonzalez faults defense counsel for not investigating and deposing other

witnesses, some who were known to the state and disclosed to defense counsel and

some who counsel allegedly might have discovered if counsel and conducted a proper

investigation.  The state court denied this claim as follows (Respondent's Exhibit 14

at 9–11):

Defendant contends counsel failed to investigate or depose either of the two store clerks, a taxi driver, an unidentified witness in the store, an unidentified witness in the parking lot, and other unknown witnesses, all of which [*sic*] were present and eyewitnesses to the incident. Defendant asserts that had counsel deposed these witnesses, their truthful and impartial testimony would have refuted the State's only witness' version of the events. Finally, Defendant contends counsel failed to investigate and depose the paramedics that responded to the scene to treat the victim. Defendant claims the paramedics were experts and would have refuted the victim's claims that his injury was caused by a beer bottle. Defendant states had the paramedics been deposed, their testimony would have refuted the State's only witness' version of events and would have confirmed Defendant's version and defense theory.

[T]he Court finds counsel's testimony to be credible. Therefore, the Court finds, according to counsel's testimony, that she sent her investigator to the scene of the crime to locate or discover any witnesses to the incident. Ms. Palvidis testified that she sent her investigator to "the bar and to the surrounding — the 7-11 and the bars surrounding the area to interview witnesses[, t]o find anyone who recalled this incident or who knew of Mr. Gonzalez or was around at the time of this incident. He met with patrons at the bar and then went to the 7-11. No one had any knowledge of our client nor this incident." *Id.*

Regarding the paramedics called to the scene to treat the victim, the Court also finds counsel did not perform deficiently by failing to investigate their identities. In her testimony, counsel stated that it is not the normal practice in these types of cases to interview, depose or call the paramedics at the scene — especially because the victim in this case refused medical attention. Additionally, during cross-examination by the State, counsel recalled that the State charged Defendant with aggravated battery with a deadly weapon, which made the extent of the victim's injuries irrelevant. The Court finds Defendant's claim, that the paramedics could have testified the victim's injuries were not caused by a beer bottle, is highly speculative. Defendant did not provide any evidence to demonstrate the paramedics actually had any such knowledge. Moreover, the Court finds it very unlikely that they could reach this conclusion because, according to counsel, the victim refused medical attention at the scene. Therefore, claim one as to the store clerks, a taxi driver, unidentified witness in the store, unidentified witness in the parking lot, other unknown

- 20 -

> witnesses, and paramedics is denied. Because the Court has
> denied Defendant's claim as to each witness he names in claim
> one, the Court will deny claim one in its entirety.

The post-conviction court reasonably applied *Strickland* by determining that Gonzalez proved no deficient performance.  The post-conviction court determined that counsel made a reasoned strategic decision about how thorough of an investigation was necessary.  "*Strickland* indicates clearly that the ineffectiveness question turns on whether the decision not to make a particular investigation was reasonable.  This correct approach toward investigation reflects the reality that lawyers do not enjoy the benefit of endless time, energy or financial resources." *Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir.) (citation omitted), *cert. denied*, 513 U.S. 899 (1994).  *Accord Chandler v. United States*, 218 F.3d 1305, 1318 n.23 (11th Cir. 2000) ("Requiring that counsel always do certain acts to be found effective (for example, interviewing some of petitioner's neighbors for mitigation evidence) would contravene the Supreme Court's directive that no set of detailed rules for counsel's conduct should be used to evaluate ineffectiveness claims.").  As stated above, the state court's credibility determination binds this court.  Gonzalez fails to prove that the state court unreasonably determined the facts or unreasonably applied *Strickland's* deficient performance standard.  As a consequence, Gonzalez proves no entitlement to relief under this claim.

**Ground Two:**

Gonzalez was charged with having committed an "aggravated battery with the use of a deadly weapon."  The jury was instructed on both that charge and the lesser-

included offense of "simple battery," a misdemeanor.  Gonzalez alleges that trial

counsel rendered ineffective assistance by not requesting a jury instruction on the

lesser-included offense of "felony battery."  The state court denied this claim as

follows (Respondent's Exhibit 14 at 11–13) (citations to record omitted):

> In claim two, Defendant alleges ineffective assistance of counsel for failing to request a lesser-included offense of felony battery. Defendant claims counsel's failure to request felony battery as a lesser-included offense prejudiced the outcome of his case. He states but for counsel's failure to request a step one lesser-included offense of felony battery, Defendant would have been "pardoned" on the lesser offense. At the evidentiary hearing, the Court inquired if Defendant asked counsel to request the lesser-included offense of felony battery and Defendant answered as follows:
>
> > Well, at the time, Your Honor, I was layman of the law. I mean, I didn't know she can request felony battery instruction. I didn't know that. But as I start learning the law, I seen that they brought up the issue that Mr. Harold suffered a scar on top of his head and he testified that, you know, he had a knee injury. And those are two of the statutory elements of felony battery.
>
> Regarding the felony battery instruction, Defendant's trial counsel testified as follows:
>
> > BRANHAM: In this particular case, do you have a reason or could you explain to us why you did not argue a felony battery as a lesser of the aggravated battery —
> >
> > PAVLIDIS: I didn't feel that was an —
> >
> > BRANHAM: — with a deadly weapon?
> >
> > PAVLIDIS: appropriate lesser offense. We argued for a simple battery, which was included a lesser offense in the verdict form.

On cross-examination, Ms. Pavlidis further testified regarding her reason for not requesting the felony battery instruction:

> COLEMAN: Okay. Let's see, and as you've already testified, the theory of prosecution, or the charge from the State was regarding a deadly weapon, not serious injury, correct?
>
> PAVLIDIS: Yes.
>
> COLEMAN: Okay. So you felt that there was no reason to ask for the lesser included offense of felony battery, would that — if you'd requested a felony battery — I mean strategically, would that make sense to request a felony battery and take a chance of the jurors coming back with a lesser felony battery, when you would rather have them come back with a battery?
>
> PAVLIDIS: We were arguing to the jury for a battery, the lesser offense of a battery.
>
> COLEMAN: Okay. So you —
>
> PAVLIDIS: Or a not guilty, obviously, that it wasn't Mr. Gonzalez.
>
> COLEMAN: So would it have been — I guess what I'm trying to say is, would it make sense to ask for a felony battery in a situation like this and take the chance that they could possibly come back with it when you were arguing for your battery?
>
> PAVLIDIS: We — yeah, we weren't arguing for a felony battery. We weren't even trying to establish a felony battery.

[T]he Court finds Ms. Pavlidis's testimony to be more credible than Defendant's testimony. Therefore, according to counsel's testimony, the Court finds her choice not to request the felony battery jury instruction was a part of her trial strategy, which was a reasonable strategy considering the evidence presented at trial. *See Rutherford*, 272 So. 2d at 223. According to counsel's testimony, she was arguing to the jury for a simple battery, and the felony battery instruction just did not fit with that strategy.

> Because counsel's decision was based in reasonable trial strategy, the Court finds Defendant has not demonstrated deficient performance as required by *Strickland*. 466 U.S. at 686–87. Therefore, claim two is denied.

The post-conviction court reasonably applied *Strickland* by determining that Gonzalez proved no deficient performance. The post-conviction court determined that counsel made a reasoned strategic decision not to request a jury instruction on the lesser-included offense of "felony battery." The court properly deferred to trial counsel's strategy. *See Hunt v. Comm'er, Ala. Dep't of Corr.*, 666 F.3d 708, 725–26 (11th Cir.) (recognizing that whether to request a jury instruction on a lesser-included offense is a matter of trial strategy), *cert. denied*, 133 S. Ct. 611 (2012). Gonzalez fails to prove that the state court unreasonably determined the facts or unreasonably applied *Strickland's* deficient performance standard. As a consequence, Gonzalez proves no entitlement to relief under this claim.

**Ground Three:**

Gonzalez alleges that trial counsel rendered ineffective assistance by not requesting a special instruction for the jury to determine whether a beer bottle qualifies as a deadly weapon. The state court summarily denied this claim without an evidentiary hearing as follows (Respondent's Exhibit 13a at 5) (citations to record omitted):

> In ground 3, Defendant claims ineffective assistance of counsel for failing to request a special jury instruction as to whether a beer bottle is a deadly weapon. He states that but for counsel's failure to request a special written instruction on deadly weapon, he would have been found not guilty or pardoned on a lesser offense. The record reflects the Court instructed the jury both

- 24 -

> verbally and in written form regarding the definition of "deadly weapon." Thus, the jury was charged with determining whether the beer bottle constituted a deadly weapon. *See Cloninger v. State*, 846 So. 2d 1192, 1193 (Fla. 4th DCA 2003) (holding whether a beer bottle constitutes a deadly weapon was a question of fact for the jury). The record conclusively refutes Defendant's claim. As such, ground 3 is denied.

The respondent correctly argues that this claim is unexhausted.  Because Gonzalez received an evidentiary hearing and he failed to include this claim in his appellate brief from the denial of post-conviction relief (Respondent's Exhibit 16), Gonzalez failed to "fairly present" this claim to the state courts.

> Duest also seeks to raise eleven other claims by simply referring to arguments presented in his motion for postconviction relief. The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.

*Duest v. Dugger*, 555 So. 2d 849, 851–52 (Fla. 1990).  *See also Cortes v. Gladish*, 216 Fed. App'x 897, 899–900 (11th Cir. 2007) ("[H]ad Cortes received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver.").  As a consequence, this claim is unexhausted.

An applicant must present each claim to a state court before raising the claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971).  *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion

rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). *See also Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."); *Kennedy v. Herring*, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), *appeal after remand, Kennedy v. Hopper*, 156 F.3d 1143 (11th Cir.), *cert. denied sub nom Kennedy v. Haley*, 526 U.S. 1075 (1999).

Although he filed a lengthy reply (Doc. 25), Gonzalez present no argument to overcome the lack of exhaustion and the consequent procedural default.  Gonzalez is not entitled to a review of the merits of ground three.

**Ground Four:**

Gonzalez alleges that trial counsel rendered ineffective assistance by not moving to suppress the "photo-pack" as "impermissibly suggestive."  The state court denied this claim as follows (Respondent's Exhibit 14 at 13–15) (citations to record omitted):

> In claim four, Defendant alleges counsel was aware of the impermissibly suggestive photo pack prior to trial, but failed to move to suppress it. Defendant contends the detective showed the photo pack only to the victim when there were five other witnesses who were alleged to have seen the offender. He states but for counsel's failure to suppress, he would have been found not guilty. At the evidentiary hearing, Defendant testified that he "immediately" saw that the photo pack was "suggestive." Defendant also testified to the following:
>
> > Basically, I wanted her to suppress the photo lineup and she wanted to keep it and bring it in at trial. And I didn't agree with that. You know, I asked her to suppress it and she said she was going to do it. And then she told me she was not going to do it. And I didn't agree with that trial strategy.
>
> Regarding the motion to suppress, trial counsel, Ms. Pavlidis, testified as follows:
>
> > BRANHAM: Okay. And in this letter — in the May 10th, [20]05 letter, Mr. Gonzalez also is requesting potentially filing a motion to suppress?
> >
> > PAVLIDIS: Yes.
> >
> > BRANHAM: Or any other motions?
> >
> > PAVLIDIS: Yes.

BRANHAM: Okay. Did you do any research or anything of that nature regarding —

PAVLIDIS: Absolutely.

BRANHAM: — those issues at that time?

PAVLIDIS: I drafted a motion to suppress and actually went over it with him. I was getting ready to file it. The motion was done.

BRANHAM: Okay.

PAVLIDIS: And when I met with him, we discussed it. And it was his decision, along with me, not to file the motion to suppress.

[T]he Court finds Ms Pavlidis's testimony to be more credible than Defendant's testimony. Therefore, according to counsel's testimony, the Court finds counsel discussed the motion to suppress the photo pack with Defendant, and counsel then researched and drafted the motion. The Court further finds, Defendant and counsel ultimately decided the best strategic decision was [to] forego filing the motion to suppress and argue the suggestiveness of the photo pack to the jury in an effort to obtain an acquittal. *Id.* The Court finds this strategy is reasonable under the circumstances of Defendant's case, and furthermore, that Defendant agreed to this strategy at the time. *Id.* Therefore, the Court finds Defendant cannot demonstrate the deficient performance requirement in *Strickland.* 466 U.S. at 686–87. Therefore, claim four is denied.

The post-conviction court rejected this claim based on a credibility determination and Gonzalez's consequent failure to prove that counsel's performance was deficient. The state court's credibility determination binds this court. The post-conviction court reasonably applied *Strickland* both by deferring to counsel's strategic choice not to move to suppress the "photo pack" and by determining that counsel's strategy was reasonable. *See Strickland*, 466 U.S. 690–91 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that

reasonable professional judgments support the limitations on investigation.").

Gonzalez fails to prove that the state court unreasonably determined the facts or

unreasonably applied *Strickland's* deficient performance standard.  As a consequence,

Gonzalez proves no entitlement to relief under this claim.

**Ground Five:**

      Gonzalez alleges that trial counsel rendered ineffective assistance by not

advising him that the state intended to seek an enhanced sentence as a prison releasee

reoffender.  The state court denied this claim as follows (Respondent's Exhibit 14

at 15–16) (citations to record omitted):

> In claim five, Defendant alleges counsel was ineffective for
> failing to advise Defendant that the State would seek Prison
> Releasee Reoffender (PRR) sentencing enhancement. Defendant
> states that if he would have known he faced a minimum fifteen-
> year sentence if he lost at trial, he would have explored plea
> options. At the evidentiary hearing, Defendant testified that
> counsel told him the maximum sentence, but never . . . advised
> him he could be subject to the PRR enhancement. At the
> evidentiary hearing, Ms. Palvadis testified that she did advise
> Defendant of his PRR status before trial, and that Defendant
> had this information at the time he refused to entertain plea
> offers from the State that included jail or prison time followed by
> probation. Additionally, on cross-examination, counsel also
> testified that she has hand written notes in her file indicating she
> discussed the PRR enhancement with Defendant before the date
> of trial.
>
> [T]he Court finds Ms. Pavlidis's testimony to be more
> credible than Defendant's testimony. Accordingly, the
> Court finds counsel did adequately advise Defendant of the
> possibility of the PRR enhancement at some point before trial.
> Consequently, the Court finds Defendant failed to demonstrate
> deficient performance as required by *Strickland*, and his
> ineffective assistance of counsel claim must fail. 466 U.S.
> at 686–87. Therefore, claim five is denied.

The post-conviction court rejected this claim based on a credibility
determination and Gonzalez's consequent failure to prove that counsel's performance
was deficient.  The state court's credibility determination binds this court.  Gonzalez
fails to prove that the state court unreasonably determined the facts or unreasonably
applied *Strickland's* deficient performance standard.  As a consequence, Gonzalez
proves no entitlement to relief under this claim.

**Ground Six:**

Gonzalez alleges that trial counsel rendered ineffective assistance by not
pursuing a plea bargain.  The state court denied this claim as follows (Respondent's
Exhibit 14 at 16–18) (citations to record omitted):

> In claim six, Defendant alleges ineffective assistance of counsel
> for failing to seek plea negotiations with the State. Defendant
> asserts he requested that counsel seek out plea offers or
> agreements with the State. Defendant states counsel told him
> "don't worry, they don't have a case." Defendant states he
> would have accepted a plea offer and not gone to trial because
> he had little to no defense, no witnesses, no pre-trial
> investigations, and no depositions. Defendant claims that he was
> prejudiced by counsel's failure to seek a plea negotiation.
> Defendant testified as follows regarding his desire to negotiate a
> plea deal with the State:
>
> > BRANHAM: Now in terms of the plea
> > discussions, originally, you were not interested in
> > a plea deal?
> >
> > GONZALEZ: Originally, no. She was saying,
> > when I first talked to her, you know, they don't
> > have a case. You know, don't worry, they don't
> > have a case. And we'll go to trial and beat it and
> > all this and that and the other.
> >
> > And then I said, "Well, you know, you're going to
> > do depositions and that, you know, have the

- 30 -

photo pack suppressed." And she said she would do that. And then the second time that I seen her, found out that she wasn't doing anything. She hadn't deposed anybody. She said she wasn't going to suppress the video.

And I was kind of getting a little concerned, so I was asking about plea offers. I said, "Well, have you talked with the State about any plea offers?" She said, "Well, I haven't." I said, "Well, do you know, go see what they got to say."

BRANHAM: Okay. And so you requested her to contact the State regarding plea offers?

GONZALEZ: Yes.

BRANHAM: Okay. And when do you recall making that request? Was that —

GONZALEZ: The second time that she come to see me.

BRANHAM: Okay, so that would've been in June of 2005?

GONZALEZ: Yes.

BRANHAM: And did you hear anything back from Miss Pavlidis regarding a possible plea —

GONZALEZ: No, when we —

BRANHAM: — discussions?

GONZALEZ: — we went to pretrial, that's when we were talking about a battery — trying to work out a battery offer. And it seemed to me, my impression I was getting that they were inclined to do that because of lack of evidence, you know. There was no beer bottle into evidence and the video didn't show a beer bottle. So, you know.

BRANHAM: Okay.

- 31 -

> GONZALEZ: My impression is that they were inclined to a simple battery. And like I said, when they told Mister — they went to talk to — discuss it with Mr. Harold, he wasn't too happy about that and they withdrew that offer.

During the evidentiary hearing, counsel testified as follows when being questioned by the Court:

> COURT: Okay. So what about the plea deal then? Did they — did you ask for a plea agreement?

> PAVLIDIS: We discussed that. Mr. Gonzalez had told me originally he didn't want to take any plea. He wanted to go to trial. Then before trial the State attorney approached me and asked me if he was interested in talking a plea, because does he understand that he's PRR? And I explained to him that we had gone over that. The only thing that he would be willing to take is a simple battery. That's the only offer he was willing to accept.

> COURT: Even when you told him about PRR and 15 years minimum mandatory?

> PAVLIDIS; Yes. Yes. We — the State had — we had never gotten a firm offer in this case, meaning, you know, so many years followed by probation.

> COURT: Right. No, I know what you mean.

> PAVLIDIS: We discussed a possible lesser time even jail sentence followed by probation, or a prison sentence followed by probation. But he didn't want to accept that.

[T]he Court finds Ms. Panvidis's testimony to be more credible than Defendant's testimony. Therefore, based on counsel's testimony, the Court finds counsel informed Defendant of the possible plea offer from the State, and it was Defendant's decision not to pursue plea negotiations, but to proceed to trial. Consequently, the Court finds Defendant has not demonstrated any deficient performance by counsel, and counsel cannot be found ineffective. *See Strickland*, 466 U.S. at 686–87. Therefore, claim six is denied.

The post-conviction court rejected this claim based on a credibility determination and Gonzalez's consequent failure to prove that counsel's performance was deficient.  The state court's credibility determination binds this court.  Gonzalez fails to prove that the state court unreasonably determined the facts or unreasonably applied *Strickland's* deficient performance standard.  As a consequence, Gonzalez proves no entitlement to relief under this claim.

**Ground Seven:**

Gonzalez alleges that trial counsel rendered ineffective assistance both by not providing him with the discovery that counsel had received from the prosecutor and by not preparing him to testify at trial.  The state court denied this claim as follows (Respondent's Exhibit 14 at 18–21) (citations to record omitted):

> In claim seven, Defendant alleges ineffective assistance of counsel for failing to provide Defendant with discovery and for failing to prepare Defendant to testify at trial. He contends that while in the county jail, he made repeated attempts [to] contact counsel through email and letters. He contends his wife also made telephone calls to counsel, but she received no response. Defendant claims that after five and one-half (5.5) months, counsel finally came to see him at the jail and informed him that she thought Defendant had bonded out. Defendant asked counsel for discovery materials, and counsel replied that her secretary had sent them. Defendant claims that he asked counsel if she had filed a motion to suppress the suggestive photo line-up, if she had investigated and deposed witnesses, if she called any witnesses for the defense, or if she had any plea offers. He claims counsel assured him everything would be done, and she would come back to see him prior to trial. Defendant contends that he did not see counsel again until they were in court the morning of trial, and he learned counsel did none of the things he requested of her. Defendant states he was put in a position where he could not testify, which allowed the State's version of events to go uncontroverted. He asserts had counsel provided

him with discovery and prepared him for trial, he would have been found not guilty or pardoned on a lesser included offense.

At the evidentiary hearing, Defendant testified as follows:

> GONZALEZ: She's saying that I didn't want to testify, which is that's incorrect, Your Honor. I wanted to testify at trial because I seen it wasn't going very good for us. And she goes, well, I advise you not to testify because I think we're looking pretty good and I want to preserve opening and closing arguments. I said, "Well, really, you know, I would like to testify." And she talked me out of it, you know. Reluctantly, I didn't testify.

> BRANHAM: And did she ever advise you that if you were the only witness called that she still would have opening and closing arguments at that particular time?

> GONZALEZ: Well, she told me that one of the reasons she wanted to preserve opening and closing arguments, and that's what one of the reasons she didn't want me to testify. And we didn't discuss anything about my prior records or prior felonies or anything like that, that's the reason I wouldn't testify.

> BRANHAM: Okay.

> GONZALEZ: Because basically is his word against mine and I wanted to get up and show the jury my version of the events.

> BRANHAM: And what was your version of the events that you advised your attorney of?

> GONZALEZ: Well my version of events is that Mr. Harold assaulted me outside of that bar that day and we could — we fought in front of the bar and we — he went into 7-11, and I went in 7-11 and we continued to fight. And there was never any — I never hit Mr. Harold with any beer bottle.

BRANHAM: And that was the testimony that you would've presented to the jury?

GONZALEZ: Yes, ma'am. Mr. Harold, he — Your Honor, he just played out like he was an innocent victim and that he's standing around minding his own business and, you know, it was totally false.

Counsel testified as follows regarding Defendant's stated desire to testify.

COURT: Okay. Do you want to address that or, whether you talked to him about testifying or not testifying?

PAVLIDIS: We did discuss that. I think every time I met with him we discussed that and prior to trial, we discussed that. I asked him to consider testifying. Obviously, in a case like this —

COURT: Yeah, I mean it's a good idea a lot of times.

PAVLIDIS: — to testify, and he told me that he does not wish to testify. But I told him to think about it. I have it in July 6th, 2005, is when I conferenced with him. He advised me that he does not wish to testify. And I told him to consider it tonight and that we would discuss it again in the morning after the State's case in chief.

COURT: Did he say why he didn't want to testify?

PAVLIDIS: What was that?

COURT: Did he say why he didn't want to testify?

PAVLIDIS: I don't believe he ever said that. I don't know if it had to do with his record. I don't have that part documented. I know we discussed it during the trial too with my co-counsel as well, and asked him, after the State's case in chief, if after hearing all the evidence and testimony from

- 35 -

the witnesses if he wished to testify, and he
declined.

[T]he Court finds Ms. Pavlidis's testimony to be more credible
than Defendant's testimony. Therefore, according to counsel's
testimony, the Court finds it was Defendant's decision not to
testify, even after counsel asked him to reconsider. It is not
reasonable to believe, as Defendant states, that counsel told him
not to testify so she could preserve opening statements and
closing argument because counsel can make an opening
statement and closing argument regardless of whether
Defendant testifies. Because the Court finds it was Defendant's
voluntary decision not to testify, the Court finds Defendant has
not demonstrated deficient performance. *See Strickland*, 466 U.S.
at 686–87.

Defendant also alleges counsel's mistaken belief that he was
bonded out of jail, and the five months that passed before he met
with Ms. Pavlidis, prejudiced him because counsel delayed too
long to prepare for trial. However, the Court finds counsel was
adequately prepared for trial and pursued a defense strategy she
felt was the best available at the time. Counsel testified that she
reviewed discovery in March or April of 2005, first met with
Defendant June 10, 2005, researched the victim, sent an
investigator to locate witnesses, and on July 5, 2005, personally
interviewed the victim. The Court therefore finds counsel's
preparation for Defendant's July 18, 2005, trial — for which
speedy trial had not run — was not deficient and did not force
Defendant to forego testifying. Finding no deficient
performance, the Court must deny Defendant's ineffective
assistance of counsel claim. *See Strickland*, 466 U.S. at 686–87.
Therefore, claim seven is denied.

The post-conviction court rejected this claim based on a credibility

determination and Gonzalez's consequent failure to prove that counsel's performance

was deficient.  The state court's credibility determination binds this court.  Gonzalez

fails to prove that the state court unreasonably determined the facts or unreasonably

applied *Strickland's* deficient performance standard.  As a consequence, Gonzalez

proves no entitlement to relief under this claim.

**Ground Eight**:

Gonzalez asserts entitlement to relief based on the cumulative effect of

trial counsel's errors.  The state court denied this claim as follows (Respondent's

Exhibit 14 at 21–22) (citations to record omitted):

> In claim eight, Defendant claims ineffective assistance of
> counsel based on cumulative error. After reviewing the
> testimony, evidence, and argument presented at the evidentiary
> hearing, the court file, the record, and the Court's rulings on
> claims one, two, four, five, six, and seven, the Court finds
> Defendant is not entitled to relief on claim eight. *See Sireci v.
> State*, 773 So. 2d 34, 41 n. 13 (Fla. 2000) (quoting *Downs v. State*,
> 140 So. 2d 506, 509 (Fla. 1999) ("finding that where allegations
> of individual error are found without merit, a cumulative error
> argument based thereon must also fail")). Therefore, claim eight
> is denied.

Gonzalez can prove cumulative error only by showing two or more errors.

"Without harmful errors, there can be no cumulative effect compelling reversal."

*United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied* 469 U.S. 1158

(1985).  *See  Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court

must consider the cumulative effect of [the alleged errors] and determine whether,

viewing the trial as a whole, [petitioner] received a fair trial as is [his] due under our

Constitution.").  Because each individual claim of error lacks merit, Gonzalez shows

no cumulative prejudicial effect.  *See Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir.

1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would

encourage habeas petitioners to multiply claims endlessly in the hope that, by

advancing a sufficient number of claims, they could obtain relief even if none of these

had any merit.  We receive enough meritless habeas claims as it is; we decline to

adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero.").  The state court properly rejected each claim of ineffective assistance of counsel.  As a consequence, cumulative error is not possible.

## CONCLUSION

To summarize, Gonzalez fails to meet his burden to show that the state court's decision was an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact.  *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013), recently recognized that this burden is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786–787, 178 L. Ed. 2d 624 (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at ___, 131 S. Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at___, 131 S. Ct., at 786 (internal quotation marks omitted).

Accordingly, Gonzalez's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Gonzalez and close this case.

## DENIAL OF BOTH
## A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Gonzalez is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Gonzalez must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Gonzalez is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Gonzalez must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 30, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE